# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-00446-COA

KARANJA L. COBBERT A/K/A KARANJA            APPELLANT
LEVON COBBERT A/K/A KARANJA COBBERT

v.

STATE OF MISSISSIPPI                                   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/2015 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KARANJA L. COBBERT (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DENIED MOTION FOR POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 06/27/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1. Karanja Cobbert argues that the circuit court exceeded its authority by imposing the full remainder of the suspended portion of his sentence after the court revoked his post-release supervision (PRS) for a second time based on "technical violations." Cobbert argues that because this was only his second revocation, the circuit court lacked authority to impose a period of imprisonment of more than 120 days to be served at a technical violation center (TVC). *See* Miss. Code Ann. § 47-7-37 (Rev. 2015). Cobbert's argument confuses the statutory definition of a "technical violation" with a revocation order, which may be based

on one or more technical violations. Cobbert had committed four technical violations, so the circuit court was within its authority to impose the full remainder of the suspended portion of his sentence. We therefore affirm the circuit court's order denying Cobbert's subsequent motion for post-conviction relief (PCR).

## FACTS AND PROCEDURAL HISTORY

¶2. In 2008, Cobbert pled guilty in the Lamar County Circuit Court to the charge of commercial burglary. The court sentenced Cobbert to serve seven years in the custody of the Mississippi Department of Corrections (MDOC), with six years suspended and five years of supervised PRS. The sentence was to be served consecutively to another sentence that Cobbert was then serving.

¶3. In December 2014, Cobbert's PRS was revoked because he had violated three conditions of his PRS: he failed to report to his probation officer, he failed to pay required supervision fees to MDOC, and he failed to pay court costs. The circuit court imposed a period of imprisonment of ninety days to be served at a TVC.

¶4. After Cobbert was released from the TVC, he again failed to report to his probation officer. He was also arrested and charged with residential burglary and receiving stolen property. At his subsequent revocation hearing, Cobbert admitted that he failed to report to his probation officer as required by the terms of his PRS. The circuit judge then revoked Cobbert's PRS based on Cobbert's admission that he failed to report, which made it unnecessary for the court to consider the new charges against Cobbert. The judge then ordered Cobbert to serve the remainder of his suspended sentence.

¶5.    In August 2015, Cobbert filed a PCR motion.  As relevant to this appeal, Cobbert

eventually argued that the circuit court lacked authority to impose a period of imprisonment

in excess of 120 days at a TVC because his PRS was revoked based on a "technical

violation."  *See* Miss. Code Ann. § 47-7-37(5).  The circuit court denied Cobbert's PCR

motion, and Cobbert filed a timely notice of appeal from the final judgment.

## DISCUSSION

¶6.    We affirm because the circuit court was within its authority when it ordered Cobbert

to serve the remainder of his suspended sentence.  Mississippi Code Annotated section 47-7-

37(5)(a) provides in relevant part:

> If the court revokes probation for a technical violation, the court shall impose
> a period of imprisonment to be served in either a technical violation center or
> a restitution center not to exceed ninety (90) days for the first technical
> violation and not to exceed one hundred twenty (120) days for the second
> technical violation.  *For the third technical violation*, the court may impose a
> period of imprisonment to be served in either a technical violation center or a
> restitution center for up to one hundred eighty (180) days or *the court may
> impose the remainder of the suspended portion of the sentence.  For the fourth
> and any subsequent technical violation, the court may impose up to the
> remainder of the suspended portion of the sentence.*

*Id.* (emphasis added).  A "[t]echnical violation" is defined as "an act or omission by the

probationer that violates a condition or conditions of probation placed on the probationer by

the court or the probation officer."  *Id.* § 47-7-2(q).

¶7.    As described above, Cobbert's PRS was revoked for his *fourth* technical violation.

At Cobbert's first revocation hearing, the State established three technical violations: that

Cobbert failed to report to his probation officer, that he failed to pay required fees, and that

he failed to pay court costs.  At Cobbert's second revocation hearing, the State established

that Cobbert had failed to report once again, his fourth technical violation. Cobbert thus committed four separate acts or omissions that violated a condition or conditions of his PRS. Therefore, under the plain language of the statute, the circuit court was within its authority to impose the remainder of the suspended portion of Cobbert's sentence.

¶8.     In arguing that the circuit court was limited to sending Cobbert to a TVC for 120 days, both Cobbert and the dissent confuse a "technical violation" with a revocation order based on one or more technical violations. The dissent argues that since this was only the second time Cobbert's PRS had been revoked because of technical violations, Cobbert could not be imprisoned for more than 120 days. However, that simply is not what the relevant statutes say. In effect, the dissent would rewrite section 47-7-37(5)(a) to read as follows:

> If the court revokes probation for a technical violation, the court shall impose a period of imprisonment to be served in either a technical violation center or a restitution center not to exceed ninety (90) days for the first [*revocation based on the commission of one or more*] technical violation[*s*] and not to exceed one hundred twenty (120) days for the second [*revocation based on the commission of one or more*] technical violation[*s*]. For the third [*revocation based on the commission of one or more*] technical violation[*s*], the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent [*revocation based on the commission of one or more*] technical violation[*s*], the court may impose up to the remainder of the suspended portion of the sentence. The period of imprisonment in a technical violation center imposed under this section shall not be reduced in any manner.

Either that, or the dissent would rewrite section 47-7-2(q) as follows:

> "Technical violation" means [*a revocation of probation based on one or more violations of*] ~~an act or omission by the probationer that violates~~ a condition or conditions of probation placed on the probationer by the court or the probation officer.

4

¶9.     As rewritten by the dissent, a probationer could commit *numerous* technical violations before the circuit judge would have the authority to impose the remainder of his suspended sentence.  This is contrary to the plain language of the relevant statutes, which permit the circuit judge to do so "[f]or the third technical violation."

¶10.    When interpreting a statute, "we simply cannot . . . ignore [its] plain language." *Bester v. State*, 188 So. 3d 526, 529 (¶10) (Miss. 2016).  Regardless of what *we* might *think* that the Legislature *meant*, "[w]hatever the Legislature says in the text of the statute is considered the best evidence of the legislative intent." *Miss. Dep't of Transp. v. Allred*, 928 So. 2d 152, 155 (¶14) (Miss. 2006) (quoting *Pegram v. Bailey*, 708 So. 2d 1307, 1314 (Miss. 1997)).  "If the words of a statute are clear and unambiguous, the Court [simply] applies the plain meaning of the statute . . . ." *Lawson v. Honeywell Int'l Inc.*, 75 So. 3d 1024, 1027 (¶7) (Miss. 2011).  "We do so because of our 'constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation.'" *Bester*, 188 So. 3d at 529 (¶10) (quoting *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (¶23) (Miss. 2006)).  "The function of the Court is not to decide what a statute should provide, but to determine what it does provide." *Lawson*, 75 So. 3d at 1027 (¶7).  Under the plain language of the relevant statutes, the circuit court was within its authority when it ordered Cobbert to serve the full remaining portion of his suspended sentence based on his fourth technical violation.

¶11.    The dissent also emphasizes that section 47-7-2(q) defines a technical violation as "an act or omission that violates a *condition or conditions* of probation." *Post* at (¶23) (emphasis added by the dissent).  The dissent reasons that under this definition "there *could potentially*

5

be more than one condition within a single violation." *Id.* (emphasis added). We agree with this interpretation of the definition. Separate conditions of PRS commonly include orders not to commit any new criminal offenses (misdemeanor or felony), to "avoid injurious or vicious habits," to "avoid persons or places of disreputable or harmful character," not to possess or consume any alcohol or drugs, and not to possess firearms or other weapons. It is easy to see that such conditions may overlap so that in some cases a *single* "act or omission" by a probationer may "violate[] a condition *or conditions* of probation." Miss. Code Ann. § 47-7-2(q) (emphasis added). Such an "act or omission" would be a single "technical violation" under the law. The dissent is correct to say this situation "*could potentially*" arise. *Post* at (¶23) (emphasis added).

¶12. However, *that is not what happened in this case*. Cobbert's PRS was first revoked because he failed to report to his probation officer, he failed to pay court costs, and he failed to pay required fees.[1] Cobbert's PRS was revoked a second time because he again failed to report to his probation officer. Section 47-7-2(q) defines a technical violation as "an act or omission that violates a condition or conditions of probation." Cobbert committed *four separate acts or omissions*, each of which violated a condition or conditions of his PRS. Again, the dissent is correct that "there could potentially be" a case in which a *single* "act or omission" by a probationer "violates . . . [multiple] conditions of [his] probation." *Post* at (¶22). But such a hypothetical case has nothing to do with the actual facts of *this case*, which

---

[1] Even if we treated Cobbert's failure to pay fees to MDOC and failure to pay court costs as a single omission, that would still leave three technical violations, which would have permitted the circuit court to impose the full remainder of the suspended portion of Cobbert's sentence. *See* Miss. Code Ann. § 47-7-37(5)(a).

6

involve four separate acts or omissions by Cobbert.

¶13. We do acknowledge that this Court recently reached a different result in *Walker v. State*, No. 2015-CP-00912-COA, 2016 WL 6083239, at \*4 (¶19) (Miss. Ct. App. Oct. 18, 2016) (rehearing denied April 11, 2017; petition for writ of certiorari filed April 21, 2017). *Walker* decided the issue in a single paragraph without discussing the proper interpretation of the statute. Walker's argument was buried at the end of the third of five issues in a lengthy, handwritten pro se brief. As a result, the State may have overlooked the issue of statutory interpretation and did not address it directly until its motion for rehearing, which we recently denied. In retrospect, we should have requested supplemental briefing before deciding *Walker*. In any event, the conclusion in *Walker* is contrary to the plain language of the statute and should be overruled.

¶14. The dissent concludes with an assertion that "[t]he majority's opinion is regressive." *Post* at (¶27). However, our role is to apply the text of the statute as it was enacted by the Legislature, not to rewrite the law because we think it is "regressive" as written. The dissent also asserts that this opinion will "defeat the purpose of the statute," which the dissent understands to be "creating uniformity among revocation sentences in Mississippi." *Id.* Assuming the dissent is correct about the statute's purpose, this assertion simply begs the question. Was the Legislature's purpose to promote uniform treatment of first, second, third, and fourth *revocations*, as the dissent thinks best? Or was the Legislature's purpose to promote uniform treatment of first, second, third, and fourth *technical violations*? The text of the statute uses the latter term, which the Legislature specifically defined. "Whatever the

7

Legislature says in the text of the statute is considered the best evidence of the legislative intent." *Allred*, 928 So. 2d at 155 (¶14) (quoting *Pegram*, 708 So. 2d at 1314).

¶15. In summary, the circuit court had authority under the plain language of section 47-7-37(5)(a) to impose the full remainder of the suspended portion of Cobbert's sentence based on his fourth technical violation of his PRS. We therefore affirm the circuit court's order denying Cobbert's subsequent PCR motion.

¶16. **THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAMAR COUNTY.**

**GRIFFIS, P.J., ISHEE, CARLTON AND FAIR, JJ., CONCUR. GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., AND BARNES, J.; LEE, C.J., AND GREENLEE, J., JOIN IN PART.**

**WESTBROOKS, J., DISSENTING:**

¶17. I believe that the circuit court exceeded its authority by imposing the full remainder of the suspended portion of Cobbert's sentence. Therefore, I respectfully dissent.

**PROCEDURAL HISTORY**

¶18. On May 12, 2008, Cobbert pleaded guilty to commercial burglary. The trial court sentenced him to seven years, with one year to serve in the custody of the MDOC, six years suspended, and five years of PRS. An order of revocation (first revocation) was filed on December 5, 2014, indicating Cobbert violated the conditions of his PRS by failing to: report, pay the required fees, and pay court costs. For his first revocation, Cobbert was ordered to serve ninety days in a technical-violation center. Shortly after being released, an arrest

warrant was issued for Cobbert, charging him with residential burglary and receiving stolen property. During this revocation hearing (second revocation), the trial court noted that it would disregard the arrest, since Cobbert had not been indicted on the two criminal charges and no witness was present at the hearing to testify as to the probability of Cobbert's guilt. The trial court revoked Cobbert's PRS due to Cobbert's admission that he had failed to report to his probation officer. Cobbert was ordered to serve the remainder of his sentence.

¶19. Cobbert filed a PCR motion alleging that the trial court failed to find he had more likely than not committed the crimes of residential burglary and receiving stolen property. The trial court denied Cobbert's PCR motion, finding that Cobbert's PRS was not revoked due to the pending criminal charges; rather, it was revoked due to Cobbert's failure to report to his probation officer. Cobbert then filed a motion for rehearing, asserting that if the trial court used the technical violation for revoking his PRS, then he should have been sent to a technical-violation center for 120 days pursuant to Mississippi Code Annotated section 47-7-37(5)(a) (Rev. 2015). I agree with Cobbert's assertion regarding sentencing.

¶20. Section 47-7-37(5)(a) was amended effective July 1, 2014, to provide for graduated penalties for technical violations. Uniformity among revocation sentencing was the legislative purpose for the amendment. *See also* Miss. Code Ann. § 47-7-38 (Rev. 2015) (imposed graduated sanctions as an alternative to revocation for offenders who committed technical violations while on probation). Prior to July 2014, the concept of "technical violations" did not exist in Mississippi, but disparity among sentencing at revocation hearings did. The probation procedures apply to PRS. *See also* Miss. Code Ann. § 47-7-37(9).

9

¶21.    Section 47-7-37(5)(a) states the following:

The probation and parole officer after making an arrest shall present to the detaining authorities a similar statement of the *circumstances of violation*. The probation and parole officer shall at once notify the court of the arrest and detention of the probationer and shall submit a report in writing showing in what manner the probationer *has violated the conditions of probation*. Within twenty-one (21) days of arrest and detention by warrant as herein provided, the court shall cause the probationer *to be brought before it and may continue or revoke all or any part of the probation or the suspension of sentence.* If the court revokes probation for a technical violation, the court shall impose a period of imprisonment to be served in either a technical violation center or a restitution center not to exceed ninety (90) days for the first technical violation and not to exceed one hundred twenty (120) days for the second technical violation. For the third technical violation, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent technical violation, the court may impose up to the remainder of the suspended portion of the sentence. The period of imprisonment in a technical violation center imposed under this section shall not be reduced in any manner.

(Emphasis added).

¶22.    The majority contends that Cobbert committed a total of four technical violations—three violations addressed in his first revocation and one violation addressed in his second revocation—thus, the trial court properly ordered Cobbert to serve the remainder of his sentence. However, the first revocation order indicated that Cobbert violated three conditions of his PRS: failure to report, failure to pay the required fees, and failure to pay court costs. The trial court ordered him to serve ninety days in a technical-violation center. The second revocation order noted that Cobbert failed to report to his probation officer,[2]

_____

[2] The order also stated Cobbert had been charged with residential burglary and receiving stolen property. As noted, the trial court disregarded this for purposes of revocation, since there was no evidence Cobbert more likely than not committed the crimes

10

which the State contends is actually Cobbert's fourth technical violation.

¶23.    Mississippi Code Annotated section 47-7-2(q) (Rev. 2015) defines a technical violation as "an act or omission by the probationer that violates a *condition or conditions* of probation placed on the probationer by the court or the probation officer." (Emphasis added). The plain reading of the statutes indicates that there could potentially be more than one condition within a single violation.  Revocation hearings typically follow after the probationer has committed multiple violations, like in Cobbert's situation where his first revocation hearing encompassed violating three conditions of his PRS.  Under the majority's rationale, if a person faces reinstatement of the remainder of his sentence after the first or second hearing, then the purpose of amending the statute to include the structured graduated schedule is defeated.  Cobbert, and others similarly situated, would face either full- or remainder-sentence reinstatement at the time of the first revocation hearing.  This would eviscerate the statute.

¶24.    The trial court revoked Cobbert's PRS and sentenced Cobbert to ninety days in the restitution center as the first technical violation.  Accordingly, pursuant to section 47-7-37(5)(a), Cobbert's second violation for failure to report to his probation officer should have resulted in a sentence of 120 days in the restitution center.  Both the majority and I agree that the circuit revoked Cobbert's PRS without considering the new charges of residential burglary and receiving stolen property.  Therefore, the only issues before the court were Cobbert's failure to report and failure to pay fees.

---

charged.

11

¶25. For these reasons, I also opine that *Walker v. State*, 2015-CP-00912-COA, 2016 WL 6083239, at \*4 (¶19) (Miss. Ct. App. Oct. 8, 2016) (rehearing denied April 11, 2017; petition for writ of certiorari filed April 21, 2017), does not contradict the statute. In *Walker*, this Court reversed and remanded for resentencing on a similar issue. There, the defendant's probation was revoked, and he was ordered to serve the remainder of his sentence. *Id.* at \*1 (¶1). The defendant's revocation was based on several violations, including failure to report, to pay fees, and to pay restitution. *Id.* at \*4 (¶18). However, this Court found, pursuant to section 47-7-37(5)(a), that it was the defendant's "first technical violation of his probation." *Id.* Thus, we found the defendant "should have been sentenced to not more than ninety days in a technical-violation center or restitution center, not to the full term of his suspended sentence . . . ." *Id.* at (¶19). *Walker* is consistent with the statute.

¶26. Also, it is important to note that most, if not all, revocations consist of more than one technical violation. I will go as far to say that a trial judge will always be presented with a defendant who has failed to pay and report—the two violations usually go hand in hand. Moreover, the facts in Cobbert are the exact same as the "hypothetical" case the majority identifies in its opinion. Maj. Op. at (¶12).

¶27. Here, it was Cobbert's second technical violation of his PRS; thus, he should have been sentenced to not more than 120 days in a technical-violation center. Accordingly, I would find that the circuit court exceeded its authority by imposing the full remainder of Cobbert's sentence. The majority's opinion is regressive and would defeat the purpose of the statute: creating uniformity among revocation sentences in Mississippi. To be clear, I do

not contend that the statute is regressive. The majority's application of the statute is regressive, because the opinion opposes the spirit of the statute.

¶28. Therefore, I would reverse and remand for resentencing.

**IRVING, P.J., AND BARNES, J., JOIN THIS OPINION; LEE, C.J., AND GREENLEE, J., JOIN THIS OPINION IN PART.**